RACINE-SATTLEY COMPANY, APPELLANT, V. FREDERICK POP-
KEN ET AL., APPELLEES.

FILED JUNE 26, 1918.   No. 20053.

Process: SERVICE: EVIDENCE. When a sheriff's return of summons is attacked, and the testimony of the officer who made the service is taken soon after the alleged service was made, and he relates in detail the facts connected with such alleged service, and there is a substantial conflict in the evidence as to the facts of the service, such issue must be determined from a preponderance of the evidence under all of the facts and circumstances. *Janous v. Columbus State Bank*, 101 Neb. 393.

APPEAL from the district court for Deuel county: HAN-
SON M. GRIMES, JUDGE. *Reversed.*

*Hoagland & Hoagland*, for appellant.

*L. O. Pfeiffer*, contra.

DEAN, J.

Plaintiff began this action to foreclose a second mortgage for $4,800 and accrued interest, and to set aside a sheriff's deed to 320 acres of land that was issued to defendant Wertz, who purchased the land under a first mortgage foreclosure proceeding wherein plaintiff, not having appeared, was defaulted. Plaintiff offered to pay into court for defendant the money he paid for the land with interest and costs. Wertz was the only answering defendant. He pleaded that he bought the land in good faith, and asked that plaintiff be denied any relief. The action was dismissed, and plaintiff appealed.

The first mortgage foreclosure action under which the land was sold to defendant was begun by A. Benzen and prosecuted to decree and sale and confirmation. Plaintiff

contends that no summons was ever at any time served upon it, and that none of its officers or employees ever at any time had any knowledge that the Benzen mortgage was in process of foreclosure or that it was foreclosed 'until about a month after the sale of the land to Wertz was confirmed, and that immediately upon making such discovery, or as soon as it could reasonably do so, it commenced this suit. The return by Cassidy, the deputy sheriff of Douglas county, that is in the usual form, recites in substance that on February 24, 1913, plaintiff was served by delivering to Joseph C. McConney, managing agent, a certified copy of the writ.

At the trial there was only one witness who testified respecting the value of the land. On this point Mr. Epperson, who is the county treasurer and a long-time resident of the county, testified that the land in question was worth from $25 to $40 an acre, at the time the sheriff sold it to Wertz for a trifle over $7 an acre. The discrepancy between the actual value and the amount realized at the sheriff's sale is so great as to shock the conscience. It raises a presumption of mistake or error of some kind, notwithstanding the land was twice appraised, as defendant points out, at only about $1,000 more than it brought at the sheriff's sale. With the exception of the county treasurer and G. E. Hendricks, who testified solely to identify the two letters from plaintiff, all the testimony was in the form of depositions, so that we have the same opportunity as that of the trial court to pass on the probative value of such testimony.

Deputy sheriff Cassidy testified on the part of defendant respecting service. He said that plaintiff was located in a large eight-story building in Omaha that was occupied by several implement machinery firms besides plaintiff. He entered the building and, speaking to some person that he did not know, he asked for the officers of the company. From what this stranger said he concluded that a man in one of the offices, who subsequently said that his name was McConney and that he was man-

ager, was the person to serve, and he gave him a copy of the writ. He said that he never saw the man whom he served before nor after the time of the service. The testimony of Cassidy shows that under the peculiar circumstances that are detailed by him he might easily have been mistaken about the identity of the person he served; and, when all of Cassidy's testimony is considered in connection with that of McConney and the other testimony, we conclude that he was mistaken in the return that he made.

McConney testified that no summons was served on him, and that he did not know Cassidy and had no recollection of any talk with him, and that he would have remembered so unusual an occurrence as the service of a summons, the company having been so served only two times that he knew of since he entered its employ twenty years before. He said that he never heard of the Benzen mortgage or suit, nor of the mortgage in suit, until after the land was sold to Wertz. Three letters of plaintiff were introduced by defendant that were addressed to Benzen's attorneys in December, 1912. All had to do with the mortgage in suit, and show that the parties were negotiating for delay in beginning the Benzen suit. The last of the series was dated December 23, 1912. In that letter plaintiff noted and thanked counsel for their courteous offer of delay in beginning the Benzen foreclosure case. In a little more than six weeks, namely, February 8, 1913, the Benzen foreclosure case was commenced. So far as the evidence shows, the plaintiff had reason to rely upon an understanding between the parties that no foreclosure would be begun without further notice to the plaintiff. It may be noted that the three letters so introduced by defendant were not written by McConney, but by Ed Wallace, cashier of plaintiff's Omaha branch, that was then in process of liquidation. It is also shown that plaintiff, by its treasurer, wrote to Mr. Benzen from the home office in Springfield, Illinois, on this subject before the Benzen action was begun, but received no re-

ply. The evidence respecting the correspondence seems to corroborate McConney's testimony that he was ignorant of the existence of both the Benzen and the plaintiff's mortgages.

It is elementary that to impeach an officer's return of service in a collateral attack the evidence must be clear and convincing. *Janous v. Columbus State Bank*, 101 Neb. 393 is in point. It is there held, in an opinion written by SEDGWICK, J., that in an action to set aside the service of summons when the validity of the service depends upon the facts, and the officer and the persons who were present when the supposed service was made testify in detail as to the facts of service, the question then is as to the preponderance of the evidence, and, if the preponderance of the evidence shows that no legal service was made, then the judgment may be set aside.

The equities appear to be with plaintiff. Almost $6,000 was its due when this case was commenced. Plaintiff, without fault on its part, did not have its day in court, and appears to have been deprived of its rights in the premises. The land that was of sufficient value to have paid all of the obligations against it was sold for a trifling sum as compared with its real value. It is not denied that plaintiff's officers and employees had no knowledge of the pendency of the Benzen foreclosure action until about two months after the sale of the land to Wertz was confirmed. It is reasonable to believe that, if they had known of the pendency of that suit, they would have taken immediate steps to protect their interests. It appears to us that the court erred in denying to plaintiff the relief prayed for. Testimony was introduced by defendant with the view of establishing the fact that McConney was the managing agent of plaintiff, which it denied; but that point we do not decide.

The judgment is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED.

MORRISSEY, C. J., not sitting.